UNITED STATES v. PORTER et al.

(District Court, E. D. Michigan, S. D. November 2, 1925.)

No. 6823.

1. Action ⬉⬉30—Action for damages for excessive cost of army cantonments held in assumpsit, and not in trespass on the case.

Action by government for damages sustained from excessive cost of an army cantonment on a cost plus contract *held* to be in assumpsit, based on breach of contract, and not in trespass on the case, based on tort.

2. Damages ⬉⬉153—Damages recoverable against contractor for breach of building contract are general, and are sufficiently described when stated in lump sum.

Where cost plus contract for construction of a building or similar work, for a definite

and specifically named sum as compensation, has been violated by construction of such building or work in an improper method, or of defective material or workmanship, and with resultant decrease in value, damages to be sustained and recoverable against contractor for such breach of contract are general, and consist of and are sufficiently described as the lump sum representing difference between value of such building or work, if constructed according to contract, and its value as actually constructed, without necessity of itemizing or apportioning the damage as between different parts of the work.

**3. United States ⊚═75—Declaration in suit by government for damages for excessive cost of construction of army cantonments under contract held sufficiently to allege damages sought.**

In action for damages by government, sustained from excessive costs of construction of army cantonment under cost plus contract between government and contractor, declaration praying for judgment in lump sum *held* sufficiently to allege damages sought, though not specifically naming exact amount of compensation to be paid to contractor for completion of work, where it furnished and described a definite basis for and manner of determining amount thereof.

**4. Contracts ⊚═9(1)—That which can be made certain by basis of computation in written instrument is certain.**

That which can be made certain by following basis of computation provided in a written instrument is certain.

**5. Evidence ⊚═508, 570—Expert testimony, to be admissible, must refer to matters involving special learning and skill, not possessed by average juror, and is to be considered merely in connection with all the evidence.**

Expert testimony, to be admissible, must be based on proper knowledge and qualifications on part of witness testifying, and must refer to matters involving special learning and skill, not possessed by average juror, so that jury will be materially aided thereby; such testimony not being conclusive as to any fact, but to be considered merely in connection with and in light of all the evidence in the case.

**6. Evidence ⊚═523—Testimony concerning values and costs of army cantonments would be admissible, if touching matters regarding which certain witnesses have special knowledge, and which would be helpful to jury.**

In suit by government for damages alleged to be sustained from excessive cost of construction of army cantonments under cost plus contract between government and contractor, testimony concerning values and costs of such works, in so far as they are not within range of experience or knowledge of average juror, but are matters regarding which certain witnesses have special knowledge, and which would be helpful to jury, would be admissible, and receive weight and consideration in connection with all the evidence to which it was entitled.

**7. United States ⊚═75—Declaration held not to allege that payments under contract were made pursuant to properly obtained approval of contracting officer.**

In suit for damages alleged to be sustained from excessive cost of construction of army cantonments under cost plus contract between government and contractor, declaration *held* not to allege that payments made to contractor under contract were made pursuant to properly obtained approval of contracting officer, provided for in contract.

**8. United States ⊚═73—Decisions of government officers under contract for construction of cantonment held binding as to actual incurring and propriety of costs of buildings.**

Under contract for construction of army cantonment for the government, decisions of government officers relating to payments and settlement of disputes under the contract are final and binding on both parties to the contract, as to actual incurring necessity, and propriety of cost of such cantonment.

**9. United States ⊚═75—Decisions of government officers under contract for construction of army cantonment may be nullified by showing of such fraud or gross mistake as indicated bad faith.**

Under contract for construction of cantonment for government, decisions of government officers relating to payments and settlement of disputes under contract may be set aside and nullified by a sufficient showing of such fraud or gross mistake as indicated bad faith, in an action at law to recover damages for excessive cost of such cantonment, as well as in a suit in equity.

At Law. Action by the United States against John D. Porter and others. On motion to dismiss declaration. Motion denied.

Delos G. Smith, U. S. Dist. Atty., of Detroit, Mich., and Jerome Michael, Henry Gale, and William T. Chantland, Sp. Asst. Attys. Gen., for the United States.

Angell, Turner & Dyer, of Detroit, Mich., and A. W. Witherspoon, of Spokane, Wash., for defendants.

TUTTLE, District Judge. This action, which is now before the court for the second time, was brought by the United States (hereinafter sometimes called the government) as plaintiff against partners doing business under the firm name of Porter Bros. (hereinafter called the contractor) as defendants to recover damages alleged by the government to have been sustained by it by reason of the wrongfully excessive cost of the construction, by the contractor, at Camp Custer, Mich., of one of the army cantonments constructed for the use of the troops during the World War, under a contract between the government and the contractor.

After the filing, in this cause, of the previous opinion of this court denying a motion of the defendants to require the plaintiff to make its declaration more specific, and to furnish, in greater detail than as shown in such declaration, various items of information relative to the claim of the government, the defendants filed the present motion to dismiss the declaration; demurrers having been abolished in Michigan.

The questions presented on this motion to dismiss, in so far as they have not already been disposed of by the previous opinion just referred to, may be conveniently grouped and discussed under three questions as follows: (1) Is the present action one in assumpsit based on breach of contract, or one in trespass on the case based on tort? (2) Does the declaration sufficiently allege the damages properly sought? (3) What is the effect of the provisions in the contract concerning approval by the contracting officer of payments made to the contractor?

[1] 1. I am clearly of the opinion that the action is one of assumpsit for the recovery of damages sustained by alleged breach of the contract referred to, a copy of which contract is attached to the declaration. Not only did the præcipe filed for the summons by which the action was instituted request the issuance of such summons "in an action of trespass on the case upon promises," but the declaration thereafter filed, after alleging the making of said contract and the respects in which it was claimed that such contract had been violated, concludes as follows: "That by article 12 of said contract it is expressly provided that all rights of action for any breach thereof by the defendants, the contractor, are reserved to the United States; and the plaintiff alleges that prior hereto it has not in any way exercised said rights, either by action or settlement, and said contract having been breached and violated in the respects herein alleged, it has instituted this action to recover from defendants the loss and damage which it has suffered by reason of such breach." It is plain that the action is one ex contractu, and is brought for the recovery of the damages alleged to have been sustained by reason of the violation of the contract in question.

2. The defendants contend that the declaration does not sufficiently set forth the damages claimed to have been sustained by the plaintiff, and which would be recoverable if the material facts alleged by plaintiff were proved. The defendants concede that, if general damages are sought, such damages need not be described in detail, but may be al-

leged in the general form followed in this declaration. The defendants, however, deny that general damages are, or can be, claimed in the present action.

The contract involved is a so-called "cost plus" contract. By its terms it is provided, in article 1, that "the contractor shall, in the shortest possible time, furnish the labor, material, tools, machinery, equipment, facilities, and supplies and do all things necessary for the construction and completion" of certain buildings and other utilities for an infantry division at Battle Creek, Mich., in accordance with drawings and specifications to be furnished by an officer of the government, termed "contracting officer," and subject to his supervision, direction, and instruction. It is further provided therein that the title to all work completed or in course of construction shall be in the United States. The contract contains the following preliminary recitals:

"Whereas, the Congress having declared by Joint Resolution approved April 6, 1917, that war exists between the United States of America and Germany, a national emergency exists and the United States urgently requires the immediate performance of the work hereinafter described, and it is necessary that said work shall be completed within the shortest possible time; and

"Whereas, it is advisable under the disturbed conditions which exist in the contracting industry throughout the country for the United States to depart from the usual procedure in the matter of letting contract, and adopt means that will insure the most expeditious results; and

"Whereas, the contractor has had experience in the execution of similar work, has an organization suitable for the performance of such work, and is ready to undertake the same upon the terms and conditions herein provided."

Articles II, III, and VI of the contract are, respectively, as follows:

### "Article II.

*"Cost of the Work.* The contractor shall be reimbursed in the manner hereinafter described for such of its actual net expenditures in the performance of said work as may be approved or ratified by the contracting officer and as are included in the following items:

"(a) All labor, material, machinery, hand tools not owned by the workmen, supplies and equipment, necessary for either temporary or permanent use for the benefit of said work; but this shall not be construed

to cover machinery or equipment mentioned in section (c) of this article. The contractor shall make no departure from the standard rate of wages being paid in the locality where said work is being done, without the prior consent and approval of the contracting officer.

"(b) All subcontracts made in accordance with the provisions of this agreement.

"(c) Rental actually paid by the contractor, at rates not to exceed those mentioned in the schedule of rental rates hereto attached, for construction plant in sound and workable condition, such as pumps, derricks, concrete mixers, boilers, clamshell or other buckets, electric motors, electric drills, electric hammers, electric hoists, steam shovels, locomotive cranes, power saws, engineers' levels and transits, and such other equipment as may be necessary for the proper and economical prosecution of the work.

"Rental to the contractor for such construction plant or parts thereof as it may own and furnish, at the rates mentioned in the schedule of rental rates hereto attached, except as hereinafter set forth. When such construction plant or any part thereof shall arrive at the site of the work, the contractor shall file with the contracting officer a schedule setting forth the fair valuation at the time of each part of such construction plant. Such valuation shall be deemed final, unless the contracting officer shall, within five days after the machinery has been set up and is working, modify or change such valuation, in which event the valuation so made by the contracting officer shall be deemed final. When and if the total rental paid to the contractor for any such part shall equal the valuation thereof, no further rental therefor shall be paid to the contractor and title thereto shall vest in the United States. At the completion of the work, the constructing officer may at his option purchase for the United States any part of such construction plant then owned by the contractor by paying to the contractor the difference between the valuation of such part or parts and the total rentals theretofore paid therefor.

"Rates of rental as substitutes for such schedule rental rates may be agreed upon in writing between the contractor and the contracting officer, such rates to be in conformity with rates of rental charged in the particular territory in which the work covered by this contract is to be performed. If the contracting officer shall furnish or supply any such equipment, the contractor shall not be allowed any rental therefor and shall receive no fee for the use of such equipment.

"(d) Loading and unloading such construction plant, the transportation thereof to and from the place or places where it is to be used in connection with said work subject to the provisions hereinafter set forth, the installation and dismantling thereof, and ordinary repairs and replacements during its use in the said work.

"(e) Transportation and expenses to and from the work of the necessary field forces for the economical and successful prosecution of the work, procuring labor and expediting the production and transportation of material and equipment.

"(f) Salaries of resident engineers, superintendents, timekeepers, foremen and other employees at the field offices of the contractor in connection with said work. In case the full time of any field employee of the contractor is not applied to said work but is divided between said work and other work, his salary shall be included in this item only in proportion to the actual time applied to this work.

"(g) Buildings and equipment required for necessary field offices, commissary and hospital, and the cost of maintaining and operating said offices, commissary and hospital, including such minor expenses as telegrams, telephone service, expressage, postage, etc.

"(h) Such bonds, fire, liability and other insurance as the contracting officer may approve or require; and such losses and expenses, not compensated by insurance or otherwise, as are found and certified by the contracting officer to have been actually sustained (including settlements made with the written consent and approval of the contracting officer) by the contractor in connection with said work, and to have clearly resulted from causes other than the fault or neglect of the contractor. Such losses and expenses shall not be included in the cost of the work for the purpose of determining the contractor's fee. The cost of reconstructing and replacing any of the work destroyed or damaged shall be included in the cost of the work for the purpose of reimbursement to the contractor, but not for the purpose of determining the contractor's fee, except as hereinafter provided.

"(i) Permit fees, deposits, royalties, and other similar items of expense incidental to the execution of this contract, and necessarily incurred. Expenditures under this item must be approved in advance by the contracting officer.

"(j) Such proportion of the transportation, traveling and hotel expenses of officers, engineers, and other employees of the con-

tractor as is actually incurred in connection with this work.

"(k) Such other items as should in the opinion of the contracting officer be included in the cost of the work. When such an item is allowed by the contracting officer, it shall be specifically certified as being allowed under this paragraph.

"The United States reserves the right to pay directly to common carriers any or all freight charges on material of all kinds, and machinery, furnished under this contract, and certified by the contracting officer as being for installation or for consumption in the course of the work hereunder; the contractor shall be reimbursed for such freight charges of this character as it shall pay and as shall be specifically certified by the contracting officer; but the contractor shall have no fee based on such expenditures. Freight charges paid by the contractor for transportation of construction equipment, construction plant, tools and supplies of every character, shall be treated as part of the cost of the work upon which the contractor's fee shall be based: Provided that charges for transportation of such construction equipment, construction plant and tools over distances in excess of five hundred miles shall require the special approval of the contracting officer.

"No salaries of the contractor's executive officers, no part of the expense incurred in conducting the contractor's main office, or regularly established branch office, and no overhead expenses of any kind, except as specifically listed above, shall be included in the cost of the work; nor shall any interest on capital employed or on borrowed money be included in the cost of the work.

"The contractor shall take advantage to the extent of its ability of all discounts available, and when unable to take such advantage shall promptly notify the contracting officer of its inability and its reasons therefor.

"All revenue from the operations of the commissary, hospital or other facilities or from rebates, refunds, etc., shall be accounted for by the contractor and applied in reduction of the cost of the work.

"Article III.

"*Determination of Fee.* As full compensation for the services of the contractor, including profit and all general overhead expense, except as herein specifically provided, the contracting officer shall pay to the contractor in the manner hereinafter prescribed a fee to be determined at the time of completion of the work from the following schedule, except as hereinafter otherwise provided:

"If the cost of the work is under $100,000.00, a fee of ten per cent. (10%) of such cost.

"If the cost of the work is over $100,000.00 and under $125,000.00, a fee of $10,000.00.

"If the cost of the work is over $125,000.00 and under $250,000.00, a fee of eight per cent. (8%) of such cost.

"If the cost of the work is over $250,000.00 and under $266,666.67, a fee of $20,000.00.

"If the cost of the work is over $266,666.67 and under $500,000.00, a fee of seven and one-half per cent. (7½%) of such cost.

"If the cost of the work is over $500,000.00 and under $535,714.29, a fee of $37,500.00.

"If the cost of the work is over $535,714.29 and under $3,000,000.00, a fee of seven per cent. (7%) of such cost.

"If the cost of the work is over $3,000,000.00 and under $3,500,000.00, a fee of $210,000.00.

"If the cost of the work is over $3,500,000.00, a fee of six per cent. (6%) of such cost.

"Provided, however, that the fee upon such part of the cost of the work as is represented by payments to subcontractors, under subdivision (b) above, shall in each of the above contingencies be five per cent. (5%) and no more of the amount of such part of the cost.

"The cost of materials purchased or furnished by the contracting officer for said work, exclusive of all freight charges thereon, shall be included in the cost of the work for the purpose of reckoning such fee to the contractor, but for no other purpose.

"The fee for reconstructing and replacing any of the work destroyed or damaged shall be such percentage of the cost thereof, not exceeding seven per cent. (7%), as the contracting officer may determine.

"The total fee to the contractor hereunder shall in no event exceed the sum of $250,000.00, anything in this agreement to the contrary notwithstanding."

"Article VI.

"*Special Requirements.* The contractor hereby agrees that it will:

"(a) Begin the work herein specified at the earliest time practicable, and diligently proceed so that such work may be completed at the earliest possible date.

"(b) Promptly pay for all labor, material or other service rendered.

"(c) Procure, and thereafter maintain such insurance, in such forms and in such amounts, and for such periods of time as the contracting officer may approve or require.

"(d) Procure all necessary permits and licenses, and obey and abide by all laws, regulations, ordinances, and other rules applying to such work, of the United States of America, of the state or territory wherein such work is done, of any subdivision thereof, or of any duly constituted public authority.

"(e) Unless this provision is waived by the contracting officer, insert in every contract made by it for the furnishing to it of services, materials, supplies, machinery, and equipment, or the use thereof, for the purposes of the work hereunder, a provision that such contract is assignable to the United States, will make all such contracts in its own name, and will not bind or purport to bind the United States or the contracting officer thereunder.

"(f) In every subcontract made in accordance with the provisions hereof, require the subcontractor to agree to comply fully with all the undertakings and obligations of the contractor herein, excepting such as do not apply to such subcontractor's work.

"(g) At all times keep at the site of the work a duly appointed representative who shall receive and execute on the part of the contractor such notices, directions and instructions as the contracting officer may desire to give.

"(h) At all times use its best efforts in all its acts hereunder to protect and subserve the interest of the contracting officer and the United States."

The eleventh, twelfth, thirteenth, and fourteenth paragraphs of the declaration are, respectively, as follows:

"(11) That, relying upon the good faith of all the parties to said agreement that they, and each of them, would faithfully perform their duty and carry out and perform all of the agreements herein specifically mentioned, together with all other agreements stipulated in said contract to be by defendants performed, the plaintiff undertook to and did carry out and perform all the conditions imposed upon it by said agreement, including the payment to defendants of the maximum fee therein provided as and for the completion by defendants of their said contract in all respects according to its terms and true tenor and spirit, under the representations by defendants that they were in good faith performing their undertaking in accordance with the terms and true tenor and spirit of said contract, and relying upon the same, and believing that the defendants were in good faith likewise performing the undertakings imposed upon them thereby, and that the money paid and advanced by the plaintiff to defendants and on account of said contract and work, was being expended by defendants in an honest and economical manner and in a manner to protect and subserve the interest of the United States, and to insure the results as required, by letter and true tenor and spirit of said agreement.

"(12) But the plaintiff now avers that defendants misrepresented to plaintiff that defendants had experience in the execution of similar work and an organization suitable for the performance of such work, and in every way equipped and qualified to perform said contract and ready to undertake the same upon the terms and conditions as therein provided and agreed upon, and to the extent that defendants were so experienced, had such organization and were so equipped, they failed and neglected to use same in the manner provided by the contract and its true spirit and tenor in the interests of the plaintiff, and plaintiff avers that the defendants did not in good faith, or at all, carry out the undertakings assumed by them in accordance with the terms and true tenor of said contract, and did not respect the confidence and trust which, under the contract and the extraordinary emergency conditions as aforesaid, had been imposed upon defendants by and for the plaintiff, but on the contrary defendants did knowingly, recklessly, illegally and fraudulently violate and abuse such confidence and trust and breach said contract, in that they did not complete their said undertaking in accordance with its terms and true tenor and spirit, and that plaintiff was compelled to and did let additional contracts to others at added cost and expense to plaintiff, for the completion of said contract, work and undertaking of defendants, and in that they counseled, advised, permitted, aided and connived in the carrying on and did themselves by and through their agents, servants and employés, carry on and conduct in a grossly negligent, inefficient and wasteful manner, and without reference to the needs of the government and in utter disregard of its rights and of the terms of their agreement, the work defendants had undertaken to perform, and by reason of said conduct and acts defendants not only caused great damage and loss to the plaintiff through their said wasteful, inefficient and fraudulent acts and conduct, and in addition thereto

greatly delayed and embarrassed the plaintiff in making preparations for the war into which it had entered, that said acts and conduct were, among others, in the following respects, to wit:

"That from the 19th day of June, 1917, when the defendants entered upon the execution of said contract, until on or about the 1st day of November, 1917, when they ceased their operations under said contract, without having completed the same, defendants permitted, caused to be committed, and did themselves commit, through and by their agents, servants and employés, great and unconscionable waste of the materials purchased or furnished for use in the construction of the buildings and utilities mentioned in said contract and paid for by the plaintiff; that defendants sold to and also purchased and resold to plaintiff at a profit to defendants, large quantities of material and equipment, some needed and some unnecessary; that defendants caused illegal and unwarranted claims and vouchers in payment for said materials and equipment to be presented to the plaintiff for payment, and the plaintiff, relying upon the honesty and good faith of the defendants and their claims so made, paid said vouchers as and when presented, under the conviction that the materials and equipment alleged to have been purchased or furnished in truth and in fact had been purchased or furnished and that cost as claimed for, and the labor claimed for had been in good faith performed, and that all were necessary for the proper performance and expeditious completion of the work undertaken by defendants; that during the whole or the greater portion of the time the defendants were employed by and were performing services for the plaintiff under said agreement, the defendants without regard to requirements and in violation of their said agreement, ordered and permitted large amounts of useless and unnecessary work to be done, employed and allocated laborers and workmen in such quantities, places and manner, that the work was retarded by reason of the congestion, confusion and idleness resulting; that the majority of the workmen employed were engaged without reference to skill, experience, or other capacity in the various building crafts or other duties for which employed, and were paid the same scale of wages as skilled workmen and artisans, and were mixed and mingled with those that were skilled, all in such a way that the morale and effectiveness of the whole force was destroyed, with the natural and inevitable result that the progress of the work was

thereby greatly impeded, retarded and delayed, and the cost thereof to plaintiff greatly and needlessly enhanced to plaintiff's damage; that in many, if not the majority of instances, there was no attempt at classification, and unskilled workmen were paid the same wages as those that were skilled, and in a majority of instances were paid wages greatly in excess of the customary and established wages being paid in that locality for workmen of similar qualifications and experience, and such negligent, wrongful and fraudulent acts were without the knowledge or consent of plaintiff, and as plaintiff is advised, alleges and believes without the consent of the contracting officer, or any officer of plaintiff on the project authorized to act in the premises for the plaintiff, or whose duty it was to protect the interests of the plaintiff; that defendants permitted continual loafing, misdirection of effort, and sabotage, on the part of workmen and laborers, both with reference to work performed and materials, tools and equipment used; that defendants, notwithstanding their duty in the premises, failed and neglected to take steps to provide any adequate supervision, inspection or checks with respect to workmen and their wages, materials used, tools and vehicles hired, or any expenditure whatsoever; that defendants ordered and procured excessive quantities of materials of all kinds without reference to quality or the necessity therefor, but which were by defendants represented to the plaintiff as being necessary and as having been inspected and as being of requisite grade, when in fact, as defendants well knew, said materials were unnecessary, of inferior grade, and not of the character and quality required by the terms of said contract; that they permitted, advised and caused large quantities of lumber, cement, wall board, tar paper, hardware, tools, and other materials and equipment to be destroyed; that they procured payments from the plaintiff for hire and rental for trucks, teams, wagons, equipment and tools, in excess of the needs of plaintiff, and in excess of schedule rates; that they procured payment for same when not necessary or in use, and for overtime, and also payment for worn-out or worthless equipment not used; that they submitted and procured the payment of sums that were in excess of the total fee stipulated in the agreement by way of profits accruing from profit-yielding rentals for the use of tools and equipment; that they failed to turn over to plaintiff equipment on which rentals paid equaled the fair value or substantially so; that they submitted and procured the pay-

ment of claims for overhead expenses not properly chargeable as items of cost under the terms of the contract; that contrary to the terms and true tenor of said agreement, they subcontracted portions of the work to various subcontractors, which work defendants were themselves in good faith obligated to perform, thereby causing the plaintiff to pay additional large fees and expenses for such work which, as aforesaid, should have been performed by the defendants; that they wrongfully employed and installed forces in duplication of forces provided by plaintiff, and claimed and received from the plaintiff payment for such unnecessary and wrongfully and fraudulently employed forces; that in direct violation of said agreement they conducted commissary and hospital privileges in a reckless and wasteful manner and at a loss of a large sum, and without warrant or right presented claims and vouchers therefor to plaintiff, which plaintiff was not required to pay under the provisions of said contract, and procured payment thereon, representing to plaintiff that, said claims were true and correct and necessary expenditures; that defendants never at any time had any adequate system of salvage for unused or surplus materials, but on the contrary deliberately and intentionally caused or permitted great quantities of useful and valuable materials to be destroyed; that they wrongfully claimed and received payment for superintendents and others acting in a supervisory capacity at exorbitant rates and for time in excess of that during which they were in fact engaged or necessarily engaged on such work; that in many instances trucks were rated in excess of their capacity and fair rental value in order that the defendants might collect thereon in excess of their actual capacity, and defendants did so collect from plaintiff; that defendants failed and neglected to take steps to provide for prompt payment to vendors and receive discounts thereon which were to be applied to the credit of the plaintiff by the defendants and in the reduction of the cost of the work; that defendants failed and neglected to take steps to provide for the care, collection and return to vendors of empty containers such as cement sacks, drums, etc., the rebates and refunds accruing from the return of which, were to be credited by the defendants to the plaintiff and in the reduction of the cost of the work; that they wrongfully failed and neglected to use or exert any effort to keep the workmen employed with any degree of regularity or intensity of application; and that in consequence large and exorbitant sums were paid for labor in excess of what would and should have been paid, had proper efforts been made by defendants in accord with their representations as to experience, ability, and capacity relating thereto, to receive a proper return in labor for the expenditures made by plaintiff, and defendants presented claims and vouchers and procured payment thereon, for all of such items so expended, as hereinbefore enumerated, as and for true and correct and only necessary expenditures, and defendants made no reports to plaintiff of or allowance for said waste and destruction of materials.

"(13) The plaintiff avers that all of the acts herein complained of were done with the connivance, knowledge, consent and by procurement of the defendants, and that they were so done, among other reasons, for the fraudulent purpose of causing excessive cost to plaintiff, and of securing from the plaintiff a maximum rather than a fair and reasonable sum in compensation for their services, that defendants knowingly, willfully and fraudulently misrepresented facts to the plaintiff and concealed true facts from the plaintiff and thereby procured and aided in procuring to be paid by the plaintiff to defendants and others, large sums of money not only as payment of their services, but for other large items to themselves and others, that were known to the defendants to be a fraud upon the plaintiff, and in violation of the trust and confidence due from and reposed in the defendants by plaintiff.

"(14) That by reason of the premises hereinbefore set forth and the facts alleged and the fraud and deceit thus practiced by defendants upon and against the plaintiff, the cost to plaintiff of the construction of said cantonment was five million dollars ($5,000,000.00) in excess of the fair and reasonable cost thereof, and the plaintiff has been damaged thereby by defendants in said amount, no part of which has been paid to the plaintiff by the defendants or by any one for the defendants."

[2-4] The final sentence in the declaration is: "Whereupon the plaintiff prays judgment against the defendants for the sum of five million dollars, together with interest thereon from the first day of November, 1917, until paid, together with the costs of this action." It is insisted by the defendants that the damages thus claimed are special rather than general, and that therefore they are entitled to have such damages particularized or itemized instead of being claimed in one lump sum as the government has done in this declaration. It cannot be doubted that,

where a contract for the construction of a building or similar work, for a definite and specifically named sum as compensation, has been violated by the construction of such building or work in an improper manner or of defective material or workmanship, and with resultant decrease in value, the damages thereby sustained and recoverable against the contractor for such breach of contract are general (that is, are the direct and natural result of such breach), and consist of, and are sufficiently described as, the lump sum representing the difference between the value of such building or work, if constructed according to the contract, and its value as actually constructed, without the necessity of itemizing or apportioning the damage as between the different parts of the work. I discover no difference in principle in this respect between such a situation and that involved here. While the present contract does not specifically name the exact amount of the compensation to be paid to the contractor for the completion of the work, it furnishes and describes the basis for and manner of determining the amount of such compensation so clearly and definitely as to leave no room for doubt in that respect. It is an elementary rule of construction that what can be made certain by following the basis of computation provided in a written instrument is certain. The legal situation, therefore, in this connection, including the proper measure of damages and the sufficiency of the allegations thereof, must be considered and treated as if the amount to which the contractor would be entitled upon the performance of the contract had been mentioned therein in figures instead of explained in words as was done. In view, then, of the allegations in the declaration as to the breach of said contract claimed to have been committed by defendants, I am satisfied that the proper measure and amount of damages recoverable by reason of such breach of contract, if proved as alleged, is the difference between the amount of the actual cost to the government of the construction of the work called for by the contract and the amount of such cost if such work had been performed in accordance with such contract; that is, of a cost which was fairly and reasonably necessary under all of the existing circumstances and was incurred in good faith. Certainly such difference in cost would represent the financial loss sustained by the government as a result of the claimed violation of this contract, if proved.

[5, 6] It must, of course, be borne in mind that the sufficiency of the allegations concerning the damages claimed and the sufficiency of the evidence by which such damages are to be proved are matters quite separate and distinct from each other. There is, however, in this connection, one question discussed by counsel in the course of argument which, while more properly one for disposition on the trial, may not inappropriately be considered at this time so that the parties may prepare accordingly. This question relates to the admissibility and effect of certain so-called expert testimony as to cost. Such testimony, of course, must be based upon proper knowledge and qualifications on the part of the witness testifying, and must refer to matters involving special learning and skill not possessed by the average juror, so that the jury will be materially aided thereby; nor will such testimony be conclusive as to any fact, but, even when admissible, will be considered merely in connection with, and in the light of, all of the evidence in the case. Under these limitations, however, and subject to all of the applicable rules governing the subject of expert testimony, testimony concerning values and costs of works such as those here involved, in so far as such matters are not within the range of the experience or knowledge of the average juror, but are matters regarding which certain witnesses have special knowledge which would be helpful to the jury, would be admissible and receive the weight and consideration, in connection with all of the other evidence, to which it was entitled.

3. Article IV of the contract provides as follows:

"Payments. On or about the seventh day of each month the contracting officer and the contractor shall prepare a statement showing as completely as possible: (1) The cost of the work up to and including the last day of the previous month; (2) the cost of the materials furnished by the contracting officer up to and including such last day; and (3) an amount equal to three and one-half per cent. (3½%), except as herein otherwise provided, of the sum of (1) and (2) on account of the contractor's fee; and the contractor at such time shall deliver to the contracting officer original signed pay rolls for labor, original invoices for materials purchased and all other original papers not theretofore delivered supporting expenditures claimed by the contractor to be included in the cost of the work. If there be any item or items entering into such statement upon which the contractor and the contracting officer cannot agree, the decision of the contracting officer as to such disputed item

or items shall govern. The contracting officer shall then, pay to the contractor on' or about the ninth day of each month the cost of the work mentioned in (1) and the fee mentioned in (3) of such statement, less all previous payments. When the statement above mentioned includes any work of reconstructing and replacing work destroyed or damaged, the payment on account of the fee in (3) for such reconstruction and replacement work shall be computed at such rate, not exceeding three and one-half per cent. (3½%), as the contracting officer may determine. The statement so made and all payments made thereon shall be final and binding upon both parties hereto, except as provided in article XIV hereof. The contracting officer may also make payments at more frequent intervals for the purpose of enabling the contractor to take advantage of discounts at intervals between the dates above mentioned or for other lawful purposes. Upon final completion of said work the contracting officer shall pay to the contractor the unpaid balance of the cost of the work and of the fee as determined under articles II and III hereof." '

Article XIV of the contract, thus referred to, is as follows:

"*Settlement of Disputes.* ' This contract shall be interpreted as a whole and the intent of the whole instrument, rather than the interpretation of any special clause, shall govern. If any doubts or disputes shall arise as to the meaning or interpretation of anything in this contract, or if the contractor shall consider himself prejudiced by any decision of the contracting officer made under the provisions of article IV hereof, the matter shall be referred to the officer in charge of cantonment construction for determination. If, however, the contractor shall feel aggrieved by the decision of the officer in charge of cantonment construction, he shall have the right to submit the same to the Secretary of War, whose decision shall be final and binding upon both parties hereto."

[7] The declaration contains no reference to the subject-matter of either of the articles of the contract just quoted and no allegation as to compliance or failure to comply therewith unless, as is urged by the defendants, such compliance is implied, or should be inferred, from the statement in the eleventh paragraph of the declaration to the effect that "the plaintiff undertook to and did carry out and perform all the conditions imposed upon it by said agreement, including the payment to defendants of the maximum fee therein provided as and for the completion by defendants of their said contract in all respects according to its terms." It is also to be noted that in the fifteenth paragraph of the declaration the plaintiff alleges that it "has not in any way .exercised" its rights of action for breach of the contract, "either by action or settlement." It seems apparent that neither of the allegations of the declaration just referred to (and there are no others in the declaration relating to this subject) avers, with the clearness and definiteness necessary to the pleading of an issuable fact, either compliance or noncompliance with the contractual provisions respecting official approval of the statements or payments mentioned in the articles of the contract just quoted. If, for example, the fact should be that all of the payments made to the defendants by the plaintiff had first been approved in the manner provided in the contract, but such approval had been obtained by fraud or such gross mistake as indicated bad faith, the government would not be bound by such approval (Martinsburg & Potomac R. Co. v. March, 114 U. S. 549, 5 S. Ct. 1035, 29 L. Ed. 255; Chicago, Santa Fé & California R. Co. v. Price, 138 U. S. 185, 11 S. Ct. 290, 34 L. Ed. 917; United States v. Gleason, 175 U. S. 588, 20 S. Ct. 228, 44 L. Ed. 284; Ripley v. United States, 223 U. S. 695, 32 S. Ct. 352, 56 L. Ed. 614; United States ·v. Mason & Hanger Co., 260 U. S. 323, 43 S. Ct. 128, 67 L. Ed. 286; Herman H. Hettler Lumber Co. v. Olds, 221 F. 612, 137 C. C. A. 336 [C. C. A. 6]; United States v. Hardaway Contracting Co. [D. C.] 3 F.[2d] 163), even though the government had made such payment in reliance on such wrongfully obtained approval, and yet the declaration might well have alleged, as it does allege, that the plaintiff had performed all conditions imposed upon it by said agreement, including the making of the payments therein provided. Moreover, if the government made payments to the contractor without out its being required so to do (as for instance without the approval of the contracting officer), the defendants would hardly be in a position to claim that an allegation of such payment by the plaintiff, the obvious purpose of which was merely to show that it was in such standing under the contract as to entitle it to sue thereon, constituted an admission by the plaintiff that such performance of the contract by it precluded it from recovery thereunder, which would be in substance the curious and anomalous result of the defendants' argument in this connection. The declaration cannot, in my opinion, be properly construed as alleging that the pay-

ments referred to therein were made pursuant to the properly obtained approval of the contracting officer provided for in the contract.

The objections, therefore, urged by the defendants to the effect that the plaintiff is barred from recovery by the fact that the statements and payments provided for by the contract have been already made and approved by the contracting officer and that the government is conclusively bound by such approval, are objections which should more properly be presented as a basis for a defense in an answer than in the motion now under consideration. As, however, this ground of defense has been presented and argued in connection with the pending motion, and consideration thereof now may avoid further delay and proceedings in this connection, I have concluded to give the subject such consideration.

[8] Notwithstanding the contention and argument of the government to the contrary, I am satisfied that the decisions of the government officers referred to in the fourth and fourteenth articles of the contract just quoted are final and binding upon both of the parties to the contract, when and as made (except when and as they may have been the result of fraud or such gross mistake as indicated bad faith, within the rule supported by the cases hereinbefore last cited), not only as to the actual incurring of such cost, as shown by such statements, but also as to the necessity and propriety of such cost. United States v. Mason & Hanger Co., supra; United States v. Hardaway Contracting Co., supra.

[9] I cannot, however, agree with the contention of the defendants to the effect that the otherwise conclusive effect of the approval of these statements and payments cannot be avoided, even by a showing of such fraud or gross mistake, in the present action at law, but only, if at all, in a suit in equity brought for that purpose. After careful consideration, I reach the conclusion that the otherwise controlling force of such decisions of the government officers may be set aside and nullified by a sufficient showing of such fraud or gross mistake, in this pending legal action as well as in a suit in equity. Louisville, Evansville & St. Louis Railway Co. v. Meyer, 30 L. Ed. 689; Wagner v. Nat. Life Ins. Co., 90 F. 395, 33 C. C. A. 121 (C. C. A. 6); Southern R. Co. v. Clark, 233 F. 900, 147 C. C. A. 574 (C. C. A. 6); Kansas City Southern R. Co. v. Martin, 262 F. 241 (C. C. A. 5).

After full and careful consideration of all of the questions and matters presented by the motion to dismiss, I am satisfied that such motion must be, and it hereby is, denied, and an order may be entered accordingly in conformity to the terms of this opinion.