## NATIONAL LABOR RELATIONS BOARD v. EXPRESS PUB. CO.

### No. 9408.

Circuit Court of Appeals, Fifth Circuit.

May 7, 1940.

Rehearing Denied June 17, 1940.

Charles Fahy, Gen. Counsel, National Labor Relations Board, Robert B. Watts, Associate Gen. Counsel, National Labor Relations Board, and Mortimer B. Wolf,

Atty., National Labor Relations Board, all of Washington, D. C., for petitioner.

Leroy G. Denman and Leroy G. Denman, Jr., both of San Antonio, Tex., for respondent.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

The respondent, a Texas corporation engaged at San Antonio in the publication of the Morning Express and the Evening News, was found guilty of unfair labor practices by petitioner, and ordered to cease and desist therefrom, as well as to take certain affirmative action which the petitioner found would effectuate the policies of the National Labor Relations Act, the order being issued pursuant to Section 10(c), and the jurisdiction of this court being based upon Section 10(e) of the act. 49 Stat. 449, 29 U.S.C.A. § 151 et seq.

The Board found that respondent had refused to bargain collectively with the San Antonio Newspaper Guild, a labor organization, contrary to Section 8(1) and (5) of the act, and that respondent, by reading a certain statement to its employees, interfered with, restrained, and coerced its employees in the exercise of the rights guaranteed in Section 7 of the act, contrary to Section 8(1) of the act. In addition to requiring respondent to cease and desist from the unfair labor practices found, the Board ordered it to bargain collectively with the Guild, and, if an understanding were reached, to embody it, upon request, in a signed agreement, and to post appropriate notices. The respondent does not object to putting into the form of a signed agreement any understanding which may be reached with the Guild, but denies that there is any evidence in the record to support the findings of the Board.

An analysis of the evidence, and even the argument of counsel for the Board, reduces the question of a refusal to bargain collectively with the Guild to the good faith of the respondent in conducting the negotiations. The facts appear partly in written negotiations, and partly in stenographic reports of the meetings at which the negotiations were had, all of which are stipulated. The Guild's representatives were promptly recognized by the employer, and negotiations conducted at great length. In March, 1938, the Guild asked for a meeting to bargain. A date was agreed upon, the meeting held, and the bargaining commenced.

The Guild submitted a contract with many provisions. The employer read a statement outlining its position. It expressed a willingness to exchange viewpoints with the Guild, to consider its proposals, and to notify it as the representative of the employees; and yet we think there was evidence to support the finding of the Board that respondent had determined in advance never to agree to anything. In law this was a refusal to bargain. Of course respondent was not bound to make any agreement, and technically it was not bound to make a counter proposal, but it was required to meet its employees with an open mind, and, if it was unwilling to do more than maintain its present status, to say so, and to express a willingness to have that as the agreement between them. It looks to us like both sides were sparring more to make a record to go before the Board than trying to get at anything practical. They are both to blame that nothing whatever came out of the negotiations.

The Board's finding that respondent interfered with its employees' right of self-organization and collective bargaining is based upon a statement of the employer read to its employees a few days after the respondent had rejected the Guild's proposal. It is argued that this statement was intended to impress upon the employees that they did not need a labor organization; that respondent was giving them fair working conditions; and that a labor organization could obtain no improvements for them. There is nothing in the statement to support the finding that it was intended to impress upon the employees that they did not need a labor organization, and the respondent denies that such was the purpose or effect of the statement. The burden of proof was on petitioner as to this charge in the complaint, and we find no evidence at all which meets that burden.

Some of respondent's employees had come directly to it, asking what would be the effect of their joining the union. It undertook to tell them what its understanding of the matter was, and told them truthfully. Its spokesman offered to testify that he did not intend any interference with union activities, and, to prevent his doing so, the complaint was

amended by striking out the allegation about intention and substituting an allegation that it had the effect of obstructing the union. No evidence whatever was introduced that it had any such effect on anybody. The employee who had propounded the question went ahead and joined the union, and that is all we have on the subject. We find no evidence to support the finding that what respondent did in this respect was an unfair labor practice.

The order of the Board will be modified by striking out all of it except that part which directs the respondent upon request, to bargain collectively with the San Antonio Newspaper Guild as the exclusive representative of respondent's employees named in the order. As so modified, the order will be enforced.