**SOLVAY PROCESS CO. v. NATIONAL LABOR RELATIONS BOARD.**

No. 9519.

Circuit Court of Appeals, Fifth Circuit.

Jan. 4, 1941.

Rehearing Denied March 8, 1941.

B. Dave Bushaw and Arnold Zeleznik, both of Detroit, Mich. (B. Dave Bushaw, of Detroit, Mich., on the brief), for petitioners.

Louise Foster, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Howard D. Pack, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

C. V. Porter, of Baton Rouge, La., and T. Justin Moore and Edmund M. Preston, both of Richmond, Va., for petitioner.

Victor A. Sachse, of Baton Rouge, La., for intervener.

Robert B. Watts, Gen. Counsel, and Lewis M. Gill, both of Washington, D. C., for National Labor Relations Board.

Herman Wright, of Houston, Tex., for intervener.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This is a petition to review an order of the National Labor Relations Board requiring the Solvay Process Company of Baton Rouge, Louisiana, to (1) withdraw all recognition from the Solvay Employees Council as a representative of the employees, (2) bargain collectively with the Oil Workers International Union, Local No. 424, as the exclusive representative of the employees, and (3) post appropriate notices; and to cease and desist from (a) dominating or supporting the Solvay Employees Council or any other union organization, (b) recognizing and dealing with the Solvay Council as the representative of the employees, (c) refusing to bargain collectively with the Oil Workers Union, and (d) interfering with, restraining, or coercing its employees in the exercise of their rights of self-organization in any manner. The Board prays that the order be enforced.

The Solvay Employees Council claims that it was denied a fair trial before the Board. It was not an original party to the action, and was given no notice of the trial, but it intervened therein. It was not permitted to cross-examine witnesses or to introduce any proof on the question of its domination by the employer.

Although it was an interested party in the case, it was in no sense a necessary party to the question of domination. The Board could determine whether the employer had violated the statute in this respect, and could make and have enforced the order requiring the company to cease and desist from such practices without prejudicing the rights of the Solvay Union in any way. It was not, therefore, entitled to the hearing.[1]

The remaining contentions deny the existence of any substantial evidence to support the order of the Board, both respect-

[1] General Investment Co. v. Lake Shore & M. S. Ry. Co., 260 U.S. 261, 43 S.Ct. 106, 67 L.Ed. 244; National Labor Relations Board v. Pennsylvania Greyhound Lines, 303 U.S. 261, 58 S.Ct. 571 82 L.Ed. 831, 115 A.L.R. 307.

ing the requirements to cease and desist, and those commanding affirmative action. The unfair labor practices charged and found to exist by the Board were violations of section 8(1), 8(2), and 8(5) of the Act, 29 U.S.C.A. § 158(1, 2, 5).[2]

During the month of March, 1938, organizers of the C. I. O. began a drive to establish a union called the Oil Workers' International Union, Local No. 424, among the employees of the Solvay Process Company at Baton Rouge. Some of the employees in the machine shop did not like the C. I. O., and approached their foreman, John Hurt, for permission to form a local union. Hurt and another foreman, A. D. Hargroder, took the matter up with their superior, who directed them to the manager of the plant. They were advised by the manager that the employees had the right to organize if they chose, that the company management could not participate in their councils or actions in any way, and that the two foremen, being of the management, would have to remain completely neutral.

Hurt and Hargroder occupied the same office in the factory. Each was highly prejudiced against unions generally and the C. I. O. in particular, believing that it was a communistic organization which benefitted its chieftains only. These views were pointedly communicated by the foremen to the employees under them, and to others. They predicted that misfortunes would rapidly follow the establishment of a C. I. O. union, and recommended the choice of the Solvay Employees Council.

The petition by which the S. E. C. was launched was dictated to Hargroder in his office, and several copies of it were typewritten by him on company paper. Hurt discussed the union with his men, and sent them into his office to read and sign the petition. These activities took place on company time and property.

Hurt and Hargroder were recognized by the manager of the company as occupying supervisory capacities as a part of the management, and, as such, constrained to remain aloof from and neutral to any organization activities of the employees.[3] Although the consistent policy of the company, as repeatedly announced by its proper officials, was to comply with the provisions of the National Labor Relations Act by permitting its employees to organize a labor union and to bargain collectively through representatives of their choosing without interference, restraint, or coercion from the management, and, although the actions of the foremen were contrary to the orders of the company manager and to the express policy of the company, there is no doubt that they constituted unfair labor practices by the employer.[4]

Several employees testified that they were intimidated, interfered with, and restrained from joining the C. I. O. union, and that they were coerced to join the S. E. C., which was fostered and supported by the company.[5] Most of this testimony was corroborated by the frank testimony of Hurt and Hargroder. Such flagrant hostility toward a labor union in process of formation in a plant by the management of that plant is recognized to be unwarranted interference in, and restraint of, the employees in the exercise of their right of self-organization,[6] and the Board was justified in inferring that the attempts of the foremen to use the influence inherent in their positions to persuade their subordinates to join one union in preference

---

[2] "Sec. 8 [§ 158]. It shall be an unfair labor practice for an employer—
"(1) To interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 [157] of this act [title].
"(2) To dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it. * * *
"(5) To refuse to bargain collectively with the representatives of his employees, * * *."

[3] International Association of Machinists v. N. L. R. B., November, 1940, 61

S.Ct. 83, 85 L.Ed. ——; N. L. R. B. v. A. S. Abell Co., 4 Cir., 97 F.2d 951; Virginia Ferry Corp. v. N. L. R. B., 4 Cir., 101 F.2d 103; N. L. R. B. v. Sunshine Mining Co., 9 Cir., 110 F.2d 780.

[4] N. L. R. B. v. A. S. Abell, supra; N. L. R. B. v. Union Pacific Stages, 9 Cir., 99 F.2d 153.

[5] See the testimony of James Duff, pages 513–515 of the transcript; John R. White, pages 193–195; J. V. Robinson, pages 993–998.

[6] N. L. R. B. v. Union Pacific Stages, 9 Cir., 99 F.2d 153.

86

to another contributed support to the S. E. C. [7]

■ The evidence relied upon by the Board to uphold its findings and order in regard to the failure of the company to bargain collectively with the proper representatives of the employees is as follows: On March 22 and April 2, 1938, a committee of the C. I. O. union approached the manager of the plant to attempt to bargain collectively with him. On those dates the union had in its possession signed union cards representing a majority of the employees in the bargaining unit. Carlton Bates, the manager, on each of the occasions refused to bargain with this committee on the ground that the S. E. C. was organizing and claimed a majority in the plant. At the first conference, he criticized the employees on the committee for not being satisfied with their present privileges and working conditions. He deplored the evils attendant upon C. I. O. strikes, and expressed his opinion that the union would not be good for the employees or the community. Kinstley, the C. I. O. organizer, neglected to present his credentials to Bates, or to state the number of the employees in the union, but he requested Bates to consent to the appointment of a disinterested third party to check the membership cards against the employment records, and determine which had the majority. Bates did not accede to this request, and remained adamant in this position until the union filed charges against the company after the meeting on April 2, 1938.

We think the steadfast unwillingness of the manager to negotiate with this committee, and his continuing failure to consent to an impartial determination of the propriety of their requests for recognition, when viewed in the light of his active disparagement of union organizations, disclosed a determined course of deliberate non-compliance from which the inference that it was an unwarranted refusal to bargain could fairly be drawn by reasonable men. [8]

■ By section 10(c) of the act, 29 U.S.C.A. § 160(c), when any person is found to have engaged in unfair labor practices by the Board, it is directed to order that person to cease and desist from such unfair labor practices, and to take such affirmative action as will effectuate the purposes of the act. Having properly found unfair labor practices to exist, the Board may exercise some discretion in determining whether affirmative or negative relief, or both, should be granted. We are unable to say that the order of the Board in this case constituted an abuse of that discretion. [9]

The petition is dismissed, and a decree will be entered enforcing the order of the Board.

---

[7] N. L. R. B. v. Pennsylvania Greyhound Lines, 303 U.S. 261, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307; N. L. R. B. v. Fansteel Metallurgical Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627, 123 A.L.R. 599.

[8] Cf. N. L. R. B. v. Waterman Steamship Co., 309 U.S. 206, 60 S.Ct. 493, 84 L.Ed. 704; N. L. R. B. v. Remington Rand, 2 Cir., 94 F.2d 862; N. L. R. B.

v. Piqua Munising Wood Products Co., 6 Cir., 109 F.2d 552; N. L. R. B. v. Express Publishing Co., 5 Cir., 111 F. 2d 588; N. L. R. B. v. Somerset Shoe Co., 1 Cir., 111 F.2d 681.

[9] Cf. Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197–236, 59 S.Ct. 206, 83 L.Ed. 126; N. L. R. B. v. Fansteel Metallurgical Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627, 123 A.L.R. 599.