## CONTINENTAL BOX CO., Inc., v. NATIONAL LABOR RELATIONS BOARD.

### No. 9432.

Circuit Court of Appeals, Fifth Circuit.

June 27, 1940.

Rehearing Denied Aug. 2, 1940.

94

M. S. McCorquodale, of Houston, Tex., for petitioner.

Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, and Leonard Appel, Atty., National Labor Relations Board, all of Washington, D. C., for respondent.

Before FOSTER, HUTCHESON, and HOLMES, Circuit, Judges.

HUTCHESON, Circuit Judge.

Both petitioner and respondent are suitors here in respect of respondent labor board's order directed against petitioner. Petitioner sues to set aside, respondent to enforce that order. On a complaint sponsoring charges filed by the Federal Labor Union, No. 21328, affiliated with the American Federation of Labor, the board found the following unfair labor practices: (1) That petitioner had discharged and thereafter refused to reinstate Coombs, Huermann, Cato and Sampson, because of union activity; (2) that it had dominated and interfered with the formation and administration, and had contributed to the support of Employees Aid Association, an unaffiliated local union of Continental's employees; and (3) that by making a "statement of its policy" [1] the night before a consent election, upon whether the "Union" should

---

[1] To Our Employees:

The Continental Box Company, Inc., in order that its employees may be fully informed upon the relation existing between them and the Company, wishes to set forth its policy and present practices as follows:

1. We recognize the right of every employee to discuss with the Management, in any way he or she pleases, matters affecting his or her employment. Each employee may discuss such matters personally or may appoint some other individual or committee, or organization to do it for the employees. We thus recognize the right of employees to bargain collectively through representatives of their own choosing and whom they may so authorize.

2. We believe that every employee has the right to join or to refrain from joining any organization or any Union. No employee is required to join any organization or any Union, because of membership or nonmembership in any lawful organization.

3. It is the policy of this Company not to enter into any agreement which will compel its employees to join, or refrain from joining, any organization in order to get or hold a job with this Company. This Company will insist that there shall be no solicitation of union membership on the Company's premises, nor

be the exclusive representative of employees eligible to membership in it, the respondent interfered with, restrained or coerced its employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act, 29 U.S.C.A. § 157. Upon these findings the board ordered respondent; (1) to cease and desist from, (a) discouraging membership in the Federal Labor Union, No. 21328, or any other labor organization of its employees, (b) dominating or interfering with the Employees Aid Association or any other labor organization, (c) in any other manner interfering with, restraining or coercing its employees in the exercise of their rights to self-organization; (2) to take affirmative action by, (a) offering reinstatement to Coombs, Huermann, Cato and Sampson, and make them whole for loss of pay, (b) withdrawing recognition from the Employees Aid Association and disestablishing it as representative of any of its employees, (c) posting notices that it will cease and desist and take affirmative action as ordered, including in the notice that respondent's employees are free to become or remain members of Federal Labor Union, No. 21328.

The respondent insists that these findings are supported by substantial evidence and that its orders are appropriate to effectuate the policies of the Act, 29 U.S.C.A. § 151 et seq. Petitioner, urging upon us that petitioner's business is not within the flow of Interstate Commerce and there is here, no labor dispute to which the invoked act applies, and of which the board has jurisdiction, insists that, if there is jurisdiction; accusation has here been made to serve as proof; suspicion, surmise and conjecture as evidence; and that in the atmosphere of a prejudiced and unfair hearing, trifles light as air, have to the jealous eye of the board, appeared as confirmations strong as proof from holy writ.

■ We reject without discussion, because completely foreclosed by the decisions, petitioner's attack upon the Board's jurisdiction to hear and decide, to proceed to its attack upon that hearing and decision. In Magnolia Petroleum Company v. National Labor Relations Board, 5 Cir., 112 F.2d 545, and Humble Oil & Refining Company v. National Labor Relations Board, 5 Cir., 113 F.2d 85, we have had recent occasion to carefully examine and define the place and function of the board and of the courts in the administration of the Act invoked here, and to carefully give application to the principles we there laid down. It will suffice here, without restating them, to proceed to their application. And first, of petitioner's general charges that the proceedings were conducted and decided in such an atmosphere of bias and prejudice, as to render the hearing unfair and the result a denial of due process. Of course, if this accusation is sustained, if the proceedings were characterized by a want of judicial fairness as petitioner claims they were, the findings and order resulting from that hearing must fall. For, "It is a fundamental principle that no judicial or quasi judicial hearing is valid, where the maxim 'audi alteram partem' is ignored, and it is therefore of the essence of a valid judgment that the body which pronounces it shall be unbiased, shall have no interest whatever in the outcome of the issue, and shall not have in any manner

shall there be any coercion or intimidation of employees, directly or indirectly, to compel them to join, or refrain from joining, any organization.

4. The Company makes every effort possible to arrange its manufacturing schedules so as to provide continuous and steady employment throughout the year. Nine hours shall constitute a day's work and fifty-four hours shall constitute a week's time at all times except during rush periods. When the Company has rush orders for boxes for perishable products or emergency shipments, the men employees shall have the right to work additional hours if they wish to do so, in lieu of putting on another shift. The Company is now making arrangement to see to it that there shall be at least one day of rest in seven.

5. The Management, and operation of this plant, and direction of the working forces, including the right to hire, promote, suspend, transfer from one job to another, or discharge, must remain in the hands of the Management of this Company. In promotion, in layoffs and in rehiring, this Company will give due regard to ability, efficiency, physical condition, and personal habits, and special consideration will also be given to seniority.

6. We want our employees to clearly understand that the Company is personally interested in their welfare; that it is the policy of the Company to pay the highest wages that prevail in our locality or in the box business, for like work under like conditions.

Continental Box Company, Inc.,
By S. F. Talbert, President.

prejudged or predetermined it."[2] But something more must be pointed to than an unfavorable or even an unsupported finding and result to sustain such a charge.

■ It must appear, if the assault is general, that the proceedings were characterized by fell expedition or determined purpose to reach a predetermined end,[3] or were attended with suppressive and exclusionary rulings and actions, designed to prevent and preventing a fair hearing.

An examination of this record discloses not only an entire absence of such purpose and action on the part of the examiner, but a hearing conducted in an atmosphere of exemplary fairness, during which petitioner was afforded every opportunity to fully present its side, followed by "reasoned conclusions," announced by the examiner in a spirit of eminent fairness and impartiality.

■ We therefore reject, as without support in the record, petitioner's attacks upon the hearing as unfair and turn to a consideration of whether, differing as they do in several particulars from the findings, conclusions and recommendations of the trial examiner, the findings and order of the board are supported by substantial evidence.

■■ And first, as to the claimed discriminatory discharges. Of the five, Coombs, Huermann, Ryan, Cato and Sampson, whose discharges and the failure to reinstate them were charged in the complaint as discriminatory because of union activities, the trial examiner found that the complaint was completely made out as to Coombs and Huermann but not as to Ryan and Cato, and that as to Sampson, it was not made out as to his discharge, but was as to the failure to reinstate him. The board found that the complaint was made out as to Coombs, Huermann, Cato and Sampson and not made out as to Ryan. We think it may not be doubted that the record supports the findings of examiner and board that Coombs and Huermann were discharged for union activity and that they had not secured substantially equivalent employment. Nor may it be doubted that the trial colloquy over the matter of Huermann's reemployment, of which petitioner makes so much, is without material significance. As to Sampson

and Cato, we are greatly impressed with the carefully reasoned conclusions of the examiner; that Sampson was discharged in a time of general layoffs, 46 employees, as to whose layoffs there is no complaint, being laid off with him, and no-one having less seniority or efficiency than Sampson being retained; that Cato was discharged for physical disability; and that the complaint that they were discharged for union activities was not made out. If it were our province to decide on the preponderance of the evidence whether the discharges had their spring in the union activities of Sampson and Cato, we should reach the same conclusion the examiner did. But, we cannot say as matter of law, and this is the limit of our province, that the evidence does not furnish a substantial basis for the board's findings that they did, that is, that reasonable and impartial minds having no interest in the result, could not fairly draw the fact inferences the board drew. We therefore give effect to the findings and order of the board as to Sampson, and Cato.

And next, as to the Employees Aid Association, the examiner finding that the respondent preferred dealing with Employees Aid Association to dealing with the Union, further found that the respondent did not form or sponsor, dominate, interfere with or support, the Employees Aid Association and recommended that the complaint on this score be dismissed.

The board differed with the examiner. From the evidence of the discharges, of the petitioner's undoubted preference for Employees Aid Association and other facts and circumstances in evidence, including the fact that the employer did not prevent the Association from soliciting membership on company property and company time, the speedy recognition of the Association as bargaining agent for its employees, the inactivity and "unfinancial" condition of the Association, it appearing to be without visible means of support the board found that the Association was company dominated and supported.

■ We do not agree with the Board that the statement of policy the company sent out just before the election, in any manner violates the letter or spirit of the

---

[2] Local No. 7 of Bricklayers', Masons' and Plasterers' International Union of America, et al., v. Bowen, et al., 278 F. 278.

[3] In the colloquy over the forthcoming trial of Rebecca, Sir Walter Scott makes the parties to it say—"I ordered the hall for his judgment seat." "What", said Bois Guilbert, "so soon?" "Aye" replied the Preceptor, "the trial moves rapidly on when the judge has determined the sentence beforehand."

Act or, standing alone, is any evidence that the employer was undertaking to interfere with or dominate its employees or any association they would form. The constitutional right of free speech (Const. amend. 1) in regard to labor matters is just as clearly a right of employers as of employees, and if the act purported to take away this right, it could not stand. Bryan Thornhill v. State of Alabama, 60 S.Ct. 736, 84 L.Ed. 1093; National Labor Relations Board v. Express Publishing Company, 5 Cir., 111 F.2d 588; Magnolia Petroleum Company v. National Labor Relations Board, supra; Humble Oil and Refining Company v. National Labor Relations Board, supra. But the enforced statute has not undertaken at all to interfere with or limit the right of free speech. All that the statute prohibits is domination, interference and support. The employer has the right to have and to express a preference for one union over another so long as that expression is the mere expression of opinion in the exercise of free speech and is not the use of economic power to coerce, compel or buy the support of the employees for or against a particular labor organization. There was more in the evidence though than the statement sent out before the election, and reasonable minds could fairly have differed as the Board and its examiner did upon the inferences to be drawn from the evidence. This being so, the findings of the board in this respect as in the others, must be accepted as substantially supported, its order must be enforced and given effect as written. Cf. National Labor Relations Board v. Brown Paper Mill, 5 Cir., 108 F.2d 867.

The petition to vacate and set the board's order aside is denied, the board's petition to enforce it is granted.