## NATIONAL LABOR RELATIONS BOARD v. FORD MOTOR CO.

No. 9679.

Circuit Court of Appeals, Fifth Circuit.

April 23, 1941.

Rehearing Denied May 31, 1941.

Robert B. Watts, Gen. Counsel, Laurence A. Knapp, Assoc. Gen. Counsel, Ernest A. Gross, Asst. Gen. Counsel, Morris P. Glushien, and Ida Klaus, all of Washington, D. C., for National Labor Relations Board.

Gabe P. Allen and Neth L. Leachman, both of Dallas, Tex., for respondent.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

This is a petition to enforce the order of the Board issued [1] against respondent on account of unfair labor practices occurring at its assembly plant at Dallas, Texas. [2]

---

[1] Pursuant to 29 U.S.C.A. § 151 et seq.

[2] The Board's order in full is as follows:

"Upon the basis of the above findings of fact and conclusions of law, and pursuant to Section 10(c) of the National Labor Relations Act, the National Labor Relations Board hereby orders that the respondent, Ford Motor Company, Dearborn, Michigan, and its officers, agents, successors, and assigns shall:

"1. Cease and desist from:

"(a) Assaulting, beating, or otherwise engaging in physical violence or inciting, encouraging, or assisting others to assault, beat, or otherwise engage in physical violence, for the purpose of discouraging membership in, or activities on behalf of, any labor organization of its employees;

"(b) Maintaining surveillance of, or employing any other means of espionage for the purpose of ascertaining or investigating, the activities of any labor organization or the activities of its employees in connection with any labor organization;

"(c) Disrupting meetings or public gatherings for the purpose of interfering with the right of its employees to self-organization;

"(d) Compelling its employees to contribute financially toward the support of any antiunion campaign;

"(e) Discouraging membership in any labor organization of its employees by discharging or refusing to reinstate any of its employees or in any other manner discriminating in regard to their hire and tenure of employment or any term or condition of their employment;

"(f) In any other manner interfering with, restraining, or coercing its employees in the exercise of their right to

328

Respondent, admitting that the Board had jurisdiction, vigorously assails, the proceedings as unfair in their conduct, the provisions of the order as both inappropriate and too wide in their scope, and with less vigor assails the findings as without support in the evidence. The Board, insisting that the proceedings were fair, the evidence ample, and that the order, except as to the provision for deduction of amounts received by employees for work performed on public projects, which it admits is invalid, is in all things within the scope of the findings and appropriate, urges its enforcement.

We may come shortly to the only substantial question raised here, whether the order is within the scope of the findings and appropriate, by saying, that the findings of the Board as to unfair labor practices at the Dallas plant are not only supported but required by the evidence, and that it does not appear that the proceedings were attended with any unfairness which substantially affected respondent's

rights. Cf. Continental Box Co. v. N. L. R. B., 5 Cir., 113 F.2d 93, 95–97.

As to the order, respondent urges upon us that the cease and desist portions are in general inappropriate now as injunctive orders, because the acts complained of and found, took place more than four years ago, under conditions no longer existing, or to be anticipated, and a court of equity will not enjoin acts which have ceased and are not likely to again occur. Specific objections to enforcement of the cease and desist orders are that (1) they are not limited as they should be under the findings, to the Dallas plant, and (2) that the general or omnibus clause (f) is inappropriate because beyond the scope of the findings.

As to the portions of the order requiring affirmative action, the complaint is: that Subdivision (a) requiring the furnishing of "adequate" protection imposes an absolute, rather than, as it should have done, a relative obligation, measured by reason and prudence; that Subdivisions (b) and

self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, as guaranteed in Section 7 of the Act.

"2. Take the following affirmative action which the Board finds will effectuate the policies of the Act:

"(a) Afford all its employees and other persons lawfully on its premises adequate protection at all times at and about its Dallas plant from intimidation, physical assaults, or threats of physical violence directed at discouraging membership in International Union of United Automobile Workers of America, affiliated with the American Federation of Labor, in Electrical Mechanics, Local Union No. 1, or in any other labor organization;

"(b) Instruct in writing all its employees at its Dallas plant that they may not make, store, or carry in the plant blackjacks or other dangerous weapons of any nature or remove them from the plant for the purpose of discouraging membership in International Union of United Automobile Workers of America, affiliated with the American Federation of Labor, or any other labor organization; and take effective action to enforce this rule;

"(c) Instruct in writing all its employees at its Dallas plant that any official or supervisory employee may not in any manner, upon pain of dismissal or other

severe penalty, interfere with the right of any employee at the plant to form, join, or assist any labor organization; and take effective action to enforce this rule;

"(d) Completely disestablish the inside squad organization at the Dallas plant;

"(e) Offer to William A. Humphries and H. C. McGarity immediate and full reinstatement to their former positions or to substantially equivalent positions, without prejudice to their seniority or other rights or privileges;

"(f) Make whole William A. Humphries and H. C. McGarity for any loss of pay * * *;

"(g) Post immediately in conspicuous places in its premises in Dallas, and maintain for a period of at least sixty (60) consecutive days from the date of posting, notices to its employees stating: * * *;

"(h) Post immediately in conspicuous places in all its plants in the United States outside the City of Dallas, and maintain for a period of at least sixty (60) consecutive days from the date of posting, notices to the employees in each of these plants stating that the respondent will not engage in the conduct from which it is ordered to cease and desist in paragraphs 1 (a), (b), (c), (d), (e), and (f) of this Order;

"(i) Notify the Regional Director for the Sixteenth Region in writing within ten (10) days from the date of this Order what steps the respondent has taken to comply herewith."

(c) in requiring that each employee be instructed in writing as therein provided, is intended to and operates punitively and not remedially, and is therefore beyond the power of the Board; and that (h) requiring posting of notices in plants other than the Dallas plant is outside the scope not only of the findings, but of the complaint and therefore unenforceable.

In support of its position, respondent, pointing to the fact that court proceedings under the Act are conducted in accordance with the equitable principles governing judicial action, [3] invokes the rule that injunctions will not issue to prevent practices which have not only been discontinued but of the recurrence of which there is no reasonable likelihood. [4]

The Board, insisting that the fact that practices have been discontinued is no ground for refusing to enforce a cease and desist order, [5] contends in effect, as we understand their contention, that this court's function is purely perfunctory to enforce any orders the Board makes, if the evidence sustains the findings as to the violations charged, though the court is convinced that the orders are wholly uncalled for and inappropriate. We think it clear that the insistence of the respondent as well as that of the Board goes too far. On the one hand, the Board's position that the court must enforce any order the Board enters, if only there is evidence to support its finding of violation, is not in accordance either with the plain terms of the statute or with the decisions under it. On the other hand, respondent's insistence that the court should consider the matter of the order to be entered, wholly uninfluenced by the view of the Board as to the order which would be appropriate is also without support.

■■ This is a special statutory proceeding, not known to the common law, and governed and controlled by the statute. "The procedure the statute outlines is not designed to award * * * damages as such. The proceeding is not, it cannot be made, a private one to enforce a private right. It is a public procedure, looking only to public ends. The statute has in mind the maintenance and further-

ing of industrial amity, and therefore peace, the prevention of industrial war. * * * The statute authorizes reparation orders not in the interest of the employee, but in the interest of the public. A cease and desist order operating retrospectively is not a private award, operating by way of penalty or of damages, it is a public reparation order, operating retrospectively by way of an order to cease and desist as to unfair practices, from their beginning; practices as to which, because forbidden in the interest of industrial amity, and therefore peace, Congress has the right to eradicate them as from the beginning." Agwilines, Inc., v. N. L. R. B., 5 Cir., 87 F.2d 146, 150. In order to effectuate its ends and at the same time to afford due process, the statute confers upon the Board the power to hear, to find and to order, but only court approval and action can make that power effective, for before this court the Board is after all and only a litigant, and as a suitor litigant, it may not assume, it must establish, its right to the relief for which it prays. Magnolia Petroleum Co. v. N. L. R. B., 5 Cir., 112 F.2d 545.

Subdivision (e), Sec. 160 authorizes the Board to petition for the enforcement of its order and provides that upon the filing of the proceeding the court "shall cause notice thereof to be served * * * and thereupon shall have jurisdiction of the proceeding and of the question determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter upon the pleadings, testimony, and proceedings set forth in such transcript a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board * * * the findings of the Board as to the facts, if supported by evidence, shall be conclusive. * * * The jurisdiction of the court shall be exclusive and its judgment and decree shall be final, except that the same shall be subject to review * * * by the Supreme Court of the United States upon writ of certiorari or certification," while Subdivision (f) provides for review on ap-

[3] Ford Motor Co. v. N. L. R. B., 305 U. S. 364, 59 S.Ct. 301, 83 L.Ed. 221.

[4] United States v. United States Steel Corp., 251 U.S. 417, 40 S.Ct. 293, 64 L. Ed. 343, 8 A.L.R. 1121; Silver Co. v. Federal Trade Commission, 6 Cir., 292 F.

752; N. L. R. B. v. Delaware-New Jersey Ferry Co., 3 Cir., 90 F.2d 520.

[5] N. L. R. B. v. Pennsylvania Greyhound Lines, 303 U.S. 261, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307; Consolidated Edison Co. v. N. L. R. B., 305 U. S. 197, 59 S.Ct. 206, 83 L.Ed. 126.

plication of the respondent and confers on the courts the same exclusive jurisdiction that Subdivision (c) confers. Title 29 U.S.C.A. § 160, Subdivisions (c) and (f).

In N. L. R. B. v. Bell Oil & Gas Company, 5 Cir., 91 F.2d 509, 514,[6] we pointed out that the functions of courts in the operation of the act is by no means perfunctory. Upon them rests the final judicial responsibility; from them emanates the sole authority for making the Board's orders coercively effective. We pointed this out again at greater length in Magnolia Petroleum Co. v. N. L. R. B., supra, and in Humble Oil & Refining Co. v. N. L. R. B., 5 Cir., 113 F.2d 85. This doctrine of the respective functions of court and Board as fixed in the statute has been affirmed and re-affirmed by the Supreme Court. Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126; N. L. R. B. v. Fansteel Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627, 123 A.L.R. 599; N. L. R. B. v. Newport News, etc., Co., 308 U.S. 241, 60 S.Ct. 203, 84 L.Ed. 219; Republic Steel Corp. v. N. L. R. B., 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. ——; N. L. R. B. v. Bradford Dyeing Ass'n, 310 U.S. 318 at page 342, 60 S.Ct. 918, at page 930, 84 L.Ed. 1226.[7]

Nothing in the statute, nothing in any of the decisions lends countenance to the view that Congress intended to make of the Circuit Courts of Appeals mere rubber stamps, mere perfunctory executors of the Board's unrestrained will. They make the contrary quite clear. It is, therefore, for this court, in the performance of its function under the statute, to say not blindly but in the exercise of an informed discretion, first, whether the findings are supported by the evidence, and, second, whether the Board's orders are *appropriate* under the statute.

Examining the order presented for enforcement and resisted by respondent, in the light of these views, we find no merit in the proffered general ground that the order is inappropriate because there is no likelihood that violations found will be repeated. The specific complaints against the order, however, stand differently. The authorities have settled it that by proceedings of this kind, the Board does not acquire a general supervisory jurisdiction over the one complained against, to be enforced by contempt orders, but only a jurisdiction as to the subject matter of the complaint. Globe Cotton Mills v. N. L. R. B., 5 Cir., 103 F.2d 91; N. L. R. B. v. Sands Manufacturing Co., 306 U.S. 332, 59 S.Ct. 508, 83 L.Ed. 682; N. L. R. B. v. Express Publishing Co., 61 S.Ct. 693, 85 L.Ed. ——.

Here it appears without question that the proceeding had to do entirely with acts at the Dallas plant, and that the

---

[6] "Upon them is conferred the jurisdiction, upon them rests the solemn duty, to judicially determine finally and for themselves the remedial decree that shall be entered. It is for them to say whether the order the Board has entered will be enforced, or modified and enforced, or set aside in whole or in part. It is only as to its fact findings, when they are supported by the evidence, that the action of the Board is binding upon the courts. The statute provides that the jurisdiction of the court shall be exclusive, and its judgment and decree final. On a petition to enforce, it is therefore the duty of the court to determine, in the exercise of an informed judicial discretion, whether, in the light of the Board's findings if they are sustained by the evidence, its order shall be enforced, modified or set aside. It is its duty to enforce the order as written, both in its prohibitory and in its mandatory phases, if in its opinion the order is supported by findings, and is such an order as under the law should properly have been entered. It is its duty to decline to enforce it, if in the opinion of the court it is not so supported by the law and the facts."

[7] "Congress has placed the power to administer the National Labor Relations Act in the Labor Board, subject to the supervisory powers of the Courts of Appeals as the Act sets out. If the Board has acted within the compass of the power given it by Congress, has, on a charge of unfair labor practice, held a 'hearing', which the statute requires, comporting with the standards of fairness inherent in procedural due process, has made findings based upon substantial evidence, and has ordered an appropriate remedy, a like obedience to the statutory law on the part of the Court of Appeals requires the court to grant enforcement of the Board's order. Until granted such enforcement, the Board is powerless to act upon the parties before it. And the proper working of the scheme fashioned by Congress to determine industrial controversies fairly and peaceably demands that the courts quite as much as the administrative body act as Congress has required."

violations of the acts charged and found went on only there. It follows necessarily then that the Board was without jurisdiction to make the order operate generally as it did; that the order to cease and desist should be modified by writing after the words "cease and desist", the words, "at the Dallas plant", and that provision (h) of the affirmative action requiring posting in plants outside of Dallas should be excised from it. It follows too for the same reason that the order is broader than and exceeds the scope of the inquiry and findings, that Section (f) should be also stricken from the cease and desist order.

As to the affirmative action required by Sections (a), (b) and (c) of the order, the sections do seem to have a certain punitive cast and it might be that as matter of original drafting, we would not have so drawn them. We think it plain, however, that in the light of this record, it cannot be said, of the requirements, as matter of law, that they are not appropriate, especially since, as it appears to us, the fears of the respondent, that the orders require it to do the impossible, that they will put it in the position of being held in contempt for not doing what it cannot do, seem farfetched, if not completely groundless.

It is our opinion, therefore, and we hold that the order of the Board as herein modified should be enforced and that a decree of enforcement should be drawn in accordance herewith and presented for entry.