## NATIONAL LABOR RELATIONS BOARD v. UNITED MINE WORKERS OF AMERICA, DIST. 2 et al.

### No. 10759.

United States Court of Appeals
Third Circuit.

Argued Nov. 6, 1952.

Decided Feb. 10, 1953.

Rehearing Denied March 20, 1953.

Abraham Siegel, Washington, D. C. (George J. Bott, General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Assistant General Counsel, Dominick L. Manoli, Washington, D. C., on the brief), for petitioner.

Samuel Krimsly, Pittsburgh, Pa. (Edward O. Golden, Pittsburgh, Pa., on the brief), for respondents.

Sherman T. Rock, Pittsburgh, Pa. (Clifford A. Weisel, Paul, Lawrence & Rock, Pittsburgh, Pa., on the brief), for intervenors amicus curiae.

Before MARIS, GOODRICH and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

The National Labor Relations Board has petitioned for the enforcement of an order issued by it against District 2 of the United Mine Workers of America and four of its officers and representatives. The Board found that the respondents in the course of an organizing drive which began in July, 1950 had violated Section 8(b) (1) (A) of

the National Labor Relations Act, as amended, 29 U.S.C.A. § 158 (b) (1) (A), by restraining and coercing the employees of Ziros Company, Mercury Mining and Construction Corporation and Pine·Hill Coal Company, coal mining operators, and Richard H. Gaiser, a coal trucking contractor, from exercising the rights guaranteed to them by Section 7 of the act. The Board found that the restraint and coercion had involved mass invasions of the mining facilities of Ziros, Mercury and Pine Hill, threatening employees of those operators and of Gaiser with economic reprisals, force and violence, and barring their ingress or egress to and from work.

The order of the Board which is here sought to be enforced requires respondent District 2 of the United Mine Workers and its agents, including specifically the four individual respondents, to cease and desist from in any manner restraining or coercing the employees of Ziros, Mercury, Pine Hill and Gaiser "or any other employees engaged in mining operations, within the territorial jurisdiction of District 2, United Mine Workers of America" in the exercise of the rights guaranteed them by Section 7 of the act. The respondents oppose enforcement of the Board's order upon the ground that the Board's findings are not supported by substantial evidence and that, in any event, the Board's order is too broad in its scope.

The Board adopted, with slight modifications, the findings of its trial examiner. These are set out in extenso in the decision of the Board. 96 N.L.R.B. 1389. It would serve no useful purpose to review them here. It is sufficient to say that our examination of the record as a whole satisfies us that the evidence amply supports the findings that the respondents restrained and coerced the employees of Ziros, Mercury, Pine Hill and Gaiser in violation of Section 8(b) (1) (A) of the act. Compare National Labor Relations Board v. United Mine Workers, 4 Cir., 1951, 190 F.2d 251; National Labor Relations Board v. United Mine Workers, 6 Cir., 1952, 195 F.2d 961; National Labor Relations Board v. United Mine Workers, 4 Cir., 1952, 198 F.2d 389.

As has been indicated, the Board's order enjoins the respondents from restraining or coercing not only the employees of Ziros, Mercury, Pine Hill and Gaiser in the exercise of their statutory rights but also any other employees engaged in mining operations within the territorial jurisdiction of District 2. In entering so broad an order the Board did not follow the recommendation of its trial examiner that the order be limited to the employees of the four employers named. The trial examiner had held that the evidence failed to establish any "planned program" on the part of the respondents to apply their unlawful techniques to all nonunion mine operators within the jurisdiction of District 2 and concluded that the entry of an order in the broad terms sought by the Board's general counsel was unwarranted. In overruling the trial examiner on this point the Board said in its decision (96 N.L.R.B. 1389, 1391–2):

"Contrary to the apparent holding of the Trial Examiner, to justify the issuance of a broad cease and desist order in this case, it is not necessary that we determine that the evidence here established, precisely as it did in the West Kentucky Coal case, the existence of a 'planned program' by the Respondents to extend their unlawful techniques to all other nonunion mines in the jurisdiction of District 2. It is sufficient, and it is clear upon all the facts before us, that the coercive practices held herein to be unlawful have been typical methods and techniques. recently utilized by the Respondents in their organizational activities and that a real danger of future commission by the Respondents of the same unlawful acts may reasonably be anticipated, not only as to the employees of the four companies involved in this proceeding but as to employees engaged in mining operations everywhere within the organizing ·jurisdiction of District 2. In order that the policies of the Act may best be effectuated, the Board's cease and desist order should, in our opinion, be coextensive with this threat.

We shall therefore issue the broad order against the Respondents requested by the General Counsel."

 The respondents strongly urge that in entering such a broad cease and desist order against them the Board exceeded its authority under the act. It is settled that the Board has broad power to determine the necessary scope of its orders and that it is authorized to restrain other violations of the act, the danger of whose commission in the future is to be anticipated from the course of the respondent's conduct in the past. National Labor Relations Board v. Express Pub. Co., 1941, 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930; May Dept. Stores Co. v. National Labor Relations Board, 1945, 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145; National Labor Relations Board v. United Mine Workers, 6 Cir. 1952, 195 F.2d 961. We agree with the Board that in exercising its power to restrain other violations than those complained of it is not limited by the necessity of finding the existence of a "planned program" on the part of the respondents to commit such other violations in the future. It is sufficient if it appears from the nature and extent of the respondents' past conduct that there is real danger that they will commit other unfair labor practices in the future.

 We are satisfied that there was substantial evidence to support the Board's finding that such danger existed in this case. Four representatives of District 2, including its president, testified that the United Mine Workers were engaged in a general campaign to organize the nonunion mines within the territory of the District, and they all stated that the acts which took place with respect to the employees of Ziros, Mercury, Pine Hill and Gaiser were not unusual but, as President Mark stated, "just the ordinary thing that we do in order to try to protect our Organization by organizing every coal operator that we can." It was on the basis of this evidence that the Board found that the coercive practices of the respondents with respect to the employees of Ziros, Mercury, Pine Hill and Gaiser were typical methods and techniques utilized by the respondents in their organizational activities and that a real danger might reasonably be anticipated of the future commission by the respondents of similar unlawful acts as to all nonunion employees engaged in mining operations everywhere within the territorial jurisdiction of District 2. Given the facts, admitted by the respondents, that they were engaged in a district-wide organizing campaign and that the organizing methods employed with respect to Ziros, Mercury, Pine Hill and Gaiser were not unusual, the Board was certainly justified in concluding that the danger exists and that unless the respondents are enjoined from doing so, they will be likely to employ those methods with respect to other nonunion operators throughout the district. We accordingly conclude that under the circumstances of this case the Board did not exceed its discretionary authority in entering the broad order which was entered in this case.

A decree will be entered enforcing the order of the Board.

HASTIE, Circuit Judge (dissenting in part).

I think the court is entering too broad a decree. I agree that the respondents, in their organizational activities, should be enjoined from restraining and coercing the employees of Richard H. Gaiser, Ziros Company, Mercury Mining and Construction Corporation and Pine Hill Coal Company in the exercise of rights guaranteed them by Section 7 of the National Labor Relations Act. I do not agree that the order should apply to respondents in their organizational activities with "any other employees engaged in mining operations, within the territorial jurisdiction of District 2, United Mine Workers of America".

District 2 embraces some seventeen Western Pennsylvania counties, outside of the Pittsburgh area, where some 35,000 union miners and an unspecified number of nonunion miners work many mines to produce some 30,000,000 tons of coal annually. The record indicates that the wrongdoing charged in this case is the coercion of some twenty-five coal miners

employed in four small strip mining and hauling enterprises.

Neither the Board nor the Trial Examiner was able to find that these violations were part of any plan for more wide-spread wrongdoing throughout District 2. At most the Board was able to find in all the circumstances "a real danger" that similar unlawful conduct might be repeated elsewhere in the District. Such risk is now held to justify a decree applicable to all mines and miners in the area.

My objection is that the order of this court will enable as many of the thousands of employees and employers in Western Pennsylvania as may in the future have disputes with the United Mine Workers concerning alleged compulsion in the matter of union membership to bring these new and independent controversies here in first instance for adjudication under contempt citations. To me this seems to be inviting the wrong procedure before the wrong tribunal. And I cannot see how the fact that the Board now anticipates future trouble justifies an advance arrangement to handle it in the wrong way. Of course this means less work for the Board. But it brings inappropriate business to us. Judge Stephens, dissenting in a somewhat similar case, N.L.R.B. v. Sun Tent-Luebbert Co., 9 Cir., 1945, 151 F.2d 483, 490, was right when he said that the National Labor Relations Act does not contemplate "summary trial of facts by the Circuit Court of Appeals by way of contempt proceedings in cases which never have been and never will be before the National Labor Relations Board."

Even where the actual misconduct is shown to be part of a plan for more widespread violation of the labor laws, regard for suitable procedure in a proper forum should, in my view, lead a Court of Appeals to do no more than enjoin acts in furtherance of the established plan. And in the absence of plan, I can see no reason whatever for permitting new labor disputes to be brought here as alleged contempts.

Moreover, to me it hardly seems fair that the union, not shown to have planned a district-wide campaign of coercion, should have the constant threat of civil and criminal contempt impending over its legitimate efforts to unionize mines throughout a large producing area. The exigencies of proof and of interpretation of conduct are such that this risk is a substantial one even for a defendant who is trying to abide by the court's decree.

The Courts of Appeals have been mindful of these considerations in cases where the Board, on the basis of unfair labor practices in one or more plants of an employer who operates other plants as well, has sought judicial enforcement of orders which would extend beyond the places of wrong and embrace similar misconduct in the employer's other plants. In such cases the courts have modified the Board's orders and have enforced them only as to the plants where unfair labor practices have actually occurred. See Reliance Manufacturing Company v. N.L.R.B., 7 Cir., 1942, 125 F.2d 311; N.L.R.B. v. Ford Motor Co., 5 Cir., 1941, 119 F.2d 326; Shell Oil Co. v. N.L.R.B., 5 Cir., 1952, 196 F.2d 637.

To me it seems that the reach of the order in the present case beyond the persons and places involved in the labor dispute before the Board is even harder to justify. I would modify the Board's order and restrict its enforcement to organizational activities in connection with the mining and hauling enterprises involved in this case.