283 F.2d 54
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
LEXINGTON ELECTRIC PRODUCTS CO., Inc., Imperial Switchboard,
Inc., and Local 3, International Brotherhood of
Electrical Workers, AFL-CIO, And Its
Agent, Julius Helfer, Respondents.
 No. 13176.
 United States Court of Appeals Third Circuit.
 Argued June 9, 1960.
Decided Sept. 29, 1960.
 
 Richard H. Frank, Washington, D.C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Frederick U. Reel, Atty., National Labor Relations Board, Washington, D.C., on the brief), for petitioner.
 Harold Stern, New York City (Norman Rothfeld, New York City, on the brief), for Local Union No. 3, International Brotherhood of Electrical Workers, AFL-CIO, and Julius Helfer.
 Stephen A. Hochman, New York City, for Lexington Imperial Products Co. and Imperial Switchboard, Inc.
 Before BIGGS, Chief Judge, and HASTIE and FORMAN, Circuit Judges.
 HASTIE, Circuit Judge.
 
 
 1
 The National Labor Relations Board has found that a manufacturing corporation, Lexington Electric Products Co., and the union which represents its employees in the New York City area, Local 3, International Brotherhood of Electrical Workers, AFL-CIO, have committed unfair labor practices in connection with the liquidation of Imperial Switchboard, Inc., a corporation engaged in work similar to that of Lexington and found to be under the same top management and control. The Board has found that the union caused a strike at the Lexington plant in Newark, New Jersey, in order to enforce its objections to the conduct of Lexington in utilizing the Imperial plant, located in the neighboring community of Union, New Jersey, for the operation of an additional shop near Newark, but beyond the territorial jurisdiction of Local 3 and not subject to organization by it.
 
 
 2
 The strike succeeded. Lexington caused the liquidation of the Imperial enterprise and the discharge of its employees, some of whom were later reemployed in the Lexington plant at Newark. Both the union and Lexington were found to have discriminated unlawfully against these Imperial employees by discharging them or causing their discharge in circumstances calculated to encourage union membership.
 
 
 3
 Throughout this case the parties have contested the basic factual issue whether the object of the strike was to protect the employees of the Lexington plant against 'farming out' work opportunities to another shop or, as the Board has found, to bring the Imperial employees within this local's jurisdiction. Evidence was introduced on both sides of this issue. We shall not analyze all of it. It will suffice to specify certain items which in our view show that the factual findings and conclusions of the trial examiner, as adopted by the Board, have an adequate evidentiary base.
 
 
 4
 Before the trial examiner, the business agent of Local 3 admitted that during negotiations which preceded the strike he told the controlling administrative officer of both Lexington and Imperial that it was not 'fair to operate a union shop and the non union' shop nearby. On the same point Lexington introduced testimony that the business agent had said that a 'company which operated in New York City with a Local No. 3 agreement could not have another plant adjacent to Local No. 3 and in that plant contractual relations with another union * * *.' The record also shows that during the strike the business agent of Local 3 demanded as a condition of reopening the Lexington plant 'that the Imperial men would have to be brought into Lexington and signed up under Local No. 3 contract'. Indeed, one of the terms of the ultimate strike settlement was that the men who had worked in the Imperial plant were to be 'picked up' by Lexington.
 
 
 5
 In addition, some doubt about the union's alleged primary concern with the removal of work from the Lexington plant is created by evidence that when the strike was called the orders which had been placed with Lexington and farmed out to Imperial represented work in excess of Lexington's Newark plant capacity. True, the union has argued that, even in this period of full employment, it was concerned primarily lest work be farmed out at some future less busy time. But we cannot say that the Board was unreasonable in refusing to believe that this mere possibility that Lexington workers might lose work in the indefinite future was the basic reason for the strike, particularly when countervailing evidence affirmatively showed expressions of concern by Local 3 officers that their jurisdiction was not recognized in a new neighboring unit serving the Lexington enterprise.
 
 
 6
 These considerations persuade us that the Board's finding as to the object of the strike is supported by substantial evidence. While the items we have discussed are but part of a total record containing other evidence favorable to the union's position, the cited evidence is sufficient to sustain the Board's findings before a court, limited as we are in reviewing administrative fact finding.
 
 
 7
 Entirely different questions are raised by certain provisions of the remedial order fashioned by the Board in this case. That order requires Lexington to employ the former Imperial workers in its plant as vacancies occur. An extraordinary feature of that requirement is a stipulation that a valid union security clause in Lexington's contract with Local 3 be suspended for two years in the cases of those former Imperial employees who are absorbed in the Lexington work force, since the Imperial operation itself was not covered by the union shop agreement. The union strongly objects to this stipulation.
 
 
 8
 As we have already indicated, the Board found, with justification on the record, that Lexington and Imperial were so related and under such common control that, for present purposes, they may be treated as a single employer. Cf. N.L.R.B. v. Condenser Corp., 3 Cir., 1942, 128 F.2d 67; N.L.R.B. v. Concrete Haulers, Inc., 5 Cir., 1954, 212 F.2d 477. Normally, an unfair termination of employment at Imperial because of nonmembership in a union would have been redressed by a requirement that the employees be restored to work status at Imperial free of any obligation to join the union. But here the union had made this impossible by insisting upon the closing of the Imperial plant. In these circumstances the feasible remedy which most closely approximates the normal corrective is the remedy devised by the Board. We cannot say that such a solution of the problem is an unjust or inappropriate way of correcting the complaining union's own wrong. A remedy which is reasonably adapted to correct the injurious effects of an unfair labor practice and thus to effectuate the objectives and policies of the statute should be recognized as within administrative discretion and should not be disturbed by a reviewing court. N.L.R.B. v. Seven-Up Bottling Co., 1953, 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377; Virginia Electric & Power Co. v. N.L.R.B., 1943, 319 U.S. 533, S.Ct. 1214, 87 L.Ed. 1568. We have such a remedy here.
 
 
 9
 A second feature of the remedy, one to which Lexington takes exception, is a requirement that the employer and the union be jointly and severally liable to make the Imperial employees whole for any loss of pay suffered as a result of the liquidation of Imperial. The employer recognizes that both the union and the employer may be, and normally are, held jointly and severally responsible for a wrongful discharge by the employer in response to the insistence of the union. N.L.R.B. v. Acme Mattress Co., 7 Cir., 1951, 192 F.2d 524; N.L.R.B. v. Newspaper & Mail Deliverers Union, 2 Cir., 1951, 192 F.2d 654. However, this court has not hesitated to refuse to enforce a reinstatement and reimbursement order when the policies of the Act seemed to call for such a course. N.L.R.B. v. Kingston Cake Co., 3 Cir., 206 F.2d 604.
 
 
 10
 This case discloses special and unusual circumstances which in our view make it patently inequitable that the employer be more than secondarily responsible for back pay. This is not merely a case where the employer acted reluctantly in acceding to the union's demands. After its plant had been struck, Lexington resisted the union's demands to the point of actually filing a formal charge of unfair labor practice against the union with the National Labor Relations Board, asserting that the strike had the very illegal objective which the Board, in the present proceeding, has now found. At that time, however, the administrative authorities did not take any action against the union on the basis of Lexington's charge. Thus, it was only after unsuccessful invocation of the normal legal remedy against an unfair labor practice strike that the employer yielded to economic coercion.
 
 
 11
 These circumstances do not prevent the employer's coerced action in discharging the Imperial employees from being an unfair labor practice. N.L.R.B. v. Imparato Stevedoring Corp., 3 Cir., 1957, 250 F.2d 297. However, on the present facts it seems needlessly and pointlessly harsh to make the employer jointly and severally, rather than secondarily, liable to the injured employees. Secondary liability on the part of the employer will fully protect the employees. Imposing joint primary liability upon this employer will not encourage other employers to resist union demands, since in this case the employer did resist to the full extent that could reasonably be expected. Rather, imposing primary liability solely upon the union will tend to discourage such coercion as proved effective here. In these special circumstances we conclude that the wronged employees will be fully protected and the policies of the act fully effectuated by imposing primary liability to the injured employees upon the union alone, and at the same time holding the employer liable to make the employees whole, should the union fail to do so.
 
 
 12
 Local 3 makes a different complaint about the breadth of the Board's proposed cease and desist order. That order in terms prohibits the union from attempting in the future to cause, not only Lexington, but also 'any other employer' to commit such unfair labor practices as have been found in this case. Moreover, this broad prohibition is supplemented by the requirement that notices be posted 'at all places where notices to stewards and members are customarily posted', without any indication that this requirement is limited to the plant of the employer involved in this suit.
 
 
 13
 The sole justification of so broad an order appears to be the opinion expressed in the decision of the Board that 'in view of the nature of the unfair labor practices committed, the commission by the Respondents of similar and other unfair labor practices reasonably may be anticipated'. Nothing is said about any prior misconduct of the union similar to that found in the present case. Moreover, there is no evidence that the present misconduct was part of a plan or scheme to be carried out against other employers in the future. It merely appears that the examiner's opinion, subsequently adopted by the Board, was that a union which will once do the sort of thing involved in this case is likely to do it again.
 
 
 14
 Heretofore, this court, in deference to the Board's expertise, has enforced similar orders even though the Board's judgment, that an unfair labor practice by a union in the case of one employer was likely to be repeated against another employer, had very little support in the record. E.g., N.L.R.B. v. United Mine Workers of America, Dist. 2, 3 Cir., 1953, 202 F.2d 177. But cf. N.L.R.B. v. Richards, 3 Cir., 1959, 265 F.2d 855. Recently, however, other courts of appelas have refused to enforce such broad orders in various situations where there has been no administrative finding of either similar prior misconduct or some comprehensive plan for similar wrongdoing in the future. Morrison-Knudsen Co. v. N.L.R.B., 9 Cir., 1960, 276 F.2d 63; Local No. 636, etc. v. N.L.R.B., D.C.Cir., 1960, 278 F.2d 858; N.L.R.B. v. United Brotherhood of Carpenters, 7 Cir., 1960, 276 F.2d 694; N.L.R.B. v. Local 926, International Union of Operating Engineers, 5 Cir., 1959, 267 F.2d 418. Then, while the present appeal was pending, the divergency of rulings of the courts of appeals in this area led the Supreme Court to consider the problem in Communication Workers of America, AFL-CIO v. N.L.R.B., 1960, 362 U.S. 479, 80 S.Ct. 838, 840, 4 L.Ed.2d 896. There the Court observed that the union was 'not found to have engaged in violations against the employees of any employer other than' the telephone company immediately involved in that case, and that there was no significant evidence of 'a generalized scheme against all telephone employers'. Accordingly, the Court struck from the Board's order language, like that in the present case, restraining similar unfair labor practices against any other employer. We think it follows that the present cease and desist order must be modified in the same way by eliminating its injunction against the coercion of 'any other employer'. By the same token the language requiring the posting of notices should be reworded to make it clear that it does not apply to places of business of employers not parties to this litigation.
 
 
 15
 We find no merit in any of the other objections which have been made to the enforcement of the Board's order.
 
 
 16
 The order of the Board will be modified in accordance with this opinion and, as thus modified, will be enforced.